UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22386-Cv-JORDAN
      (07-20759-Cr-JORDAN)
MAGISTRATE JUDGE P. A. WHITE

ALBERTO GONZALEZ,            :

        Movant,              :          REPORT OF
                                        MAGISTRATE JUDGE
v.                           :

UNITED STATES OF AMERICA,    :

        Respondent.          :
_____

## Introduction

This matter is before the Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for possession with intent to distribute a detectable amount of cocaine, entered following a guilty plea in criminal case no. 07-20759-Cr-Jordan.

The Court has reviewed the motion (Cv-DE#1), the memorandum of law (Cv-DE#2), the government's response (Cv-DE#9), the movant's reply (Cv-DE#10), the Presentence Investigation Report (PSI) and all pertinent portions of the underlying criminal file.

Construing the movant's arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following claims in his §2255 motion:

1.   The movant was denied his Fifth and Sixth Amendment rights and he was denied effective assistance of counsel when his attorney failed to object to the breach of the plea agreement. (Cv-DE#1:5).

1

2.   The movant's sentence was imposed in violation of due process of law and he was denied effective assistance of counsel under the Fifth and Sixth Amendments of the United States Constitution when his attorney failed to object to the Presentence Investigation Report. (Cv-DE#1:6).

3.   The movant's sentence was imposed in violation of due process of law and he was denied effective assistance of counsel under the Fifth and Sixth Amendments of the United States Constitution when his attorney failed to object to certain criminal history points assessed in the Presentence Investigation Report. (Cv-DE#1:7-7(A)).

To the extent the claims raised in his motion are inter-related or duplicative, those issues will be discussed together.

<u>Factual History</u>

During the change of plea hearing, the movant acknowledged the following factual proffer:

Had this case proceeded to trial, the United States would have presented evidence proving the following beyond a reasonable doubt:

On July 24, 2007, a confidential source placed a telephone call to Alberto Gonzalez to set up a deal to purchase cocaine. Later that day, law enforcement officers observed Gonzalez arrive for the meeting in a black Chevrolet Avalanche. The confidential source then met with Gonzalez and provided him with $1,125 in law enforcement funds. Gonzalez then provided the confidential source with 41 grams of cocaine.

(Cv-DE#9,Ex.2:29).

## Procedural History

The procedural history of the underlying criminal case reveals that on September 20, 2007, the federal grand jury returned an indictment charging the movant with conspiracy to possess with intent to distribute five or more kilograms of a mixture and substance containing a detectable amount of cocaine, a mixture and substance containing a detectable amount of heroin, a mixture and substance containing a detectable amount of crack cocaine and fifty or more marijuana plants, in violation of 21 U.S.C. §841(a)(1), all in violation of 21 U.S.C. §846 (Count One) and possession with intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §841(a)(1) (Count Five). (Cr-DE#11).

Thereafter, on April 1, 2008, pursuant to a written plea agreement, the movant pleaded guilty as to Count Five only. (Cr-DE#467,468).

A PSI was prepared in anticipation of sentencing wherein the probation officer determined that the movant was accountable for the marijuana equivalent of more than 100 kilograms but less than 400 kilograms of marijuana, thus resulting in a base offense level of 26. (PSI¶71). However, because the movant clearly demonstrated acceptance of responsibility for his offense, his base offense level was reduced by three levels. (PSI¶¶78-79) Ultimately, his base offense level was set at 23. (PSI¶80).

The probation officer further determined the movant had a subtotal of 14 criminal history points. (PSI¶¶91,92,96,97,98). Moreover, because the movant committed the offense less than two years from release from custody, two points were added to his criminal history. (PSI¶99). The movant had a total of 16 criminal

3

history points and a criminal history category of VI. (PSI¶100). Based on a total offense level of 23 and a criminal history category of VI, the applicable guideline imprisonment range was 92 to 115 months. (PSI¶139).

On August 14, 2008, the movant appeared for sentencing wherein he was sentenced to 92 months, followed by 3 years of supervised release with special conditions and $100 special assessment. (Cr-DEs#564,565). The Clerk entered judgment on August 14, 2008. (Cr-DE#565). A timely notice of appeal was filed. (Cr-DE#568). On April 10, 2009, the Eleventh Circuit, per curiam, in an unpublished opinion, affirmed the movant's conviction and sentence. (Cr-DE#647). It appears the movant did not petition for writ of certiorari. The judgment of conviction in the underlying criminal case became final at the latest on July 10, 2009, ninety days after the judgment was issued on direct appeal,[1] when time expired for seeking certiorari review with the Supreme Court. The motion was timely filed less than one year later on August 10, 2009. (Cv-DE#1).

## Waiver of Claims

Before turning to a discussion of the claims on the merits, it should first be noted that the movant waived his right to contest all nonjurisdictional defects and defenses, when he entered into a

---

[1]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufmann, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

knowing and voluntary guilty plea. In **claims one, two and three,** as listed above, the movant asserts he was denied effective assistance of counsel due to various reasons. It is well-settled that sentence appeal waivers are valid if made knowingly and voluntarily. Williams v. United States, 396 F.3d 1340, 1341 (internal citation omitted). The Eleventh Circuit has held that "[a] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005); see also, Leach v. United States, 171 Fed. Appx. 765 (11th Cir. 2006); Johnson v. United States, 2007 WL 4615236 *5-6 (S.D. Fla. 2007).

In this case, the movant's waiver of his right to collateral attack is valid and enforceable against **claims one, two and three**. The record demonstrates that this Court specifically questioned the movant about the contents of the plea agreement during the Rule 11 hearing and that he understood its significance. (Cv-DE#9,Ex.2). Therefore, the movant's waiver of his right to collaterally attack his sentence is enforceable, and the Court need not reach the merits of the movant's arguments relating to his sentence as found in **claims one, two and three**. Williams v. United States, 396 F.3d 1340, 1341. As noted by the Williams court, to hold otherwise would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams, supra. Notwithstanding, the claims will be addressed briefly on the merits below.

Moreover, to ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the

defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

Id.

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cv-DE#9,Ex.2). At

6

that time, the movant acknowledged under oath[2] that he was satisfied with counsel's representation, and that he had discussed the charges and the case in general, including his options with counsel. (Id.:18). The court advised and the movant acknowledged the potential consequences of entering a guilty plea. (Id.:27-28). The movant also denied being made any representations in order to convince him to plead guilty and no one has made him any promises or assurances to induce him to enter a guilty plea. (Id.:26). He pleaded guilty out of his own free will. (Id.:27). The court further advised the movant of the essential elements of the offenses, as well as, the fact that the statutory maximum term as a result of the offense was 20 years in prison, followed by at least 3 years of supervised release, along with a special assessment of $100 and a fine of up to $1 million dollars. (Id.:18-20). Moreover, the movant acknowledged the government's summary of the essential terms of the plea agreement. (Id.:29).

Moreover, the movant acknowledged he had a chance to discuss the Sentencing Guidelines and how they affected his case with his attorney. (Cv-DE#9,Ex.2:20). Likewise he understood that the Court would not permit him to withdraw his guilty plea solely as a result of sentence received. (Id.:20-21). Moreover, he was warned that any estimate of the sentence given by counsel or anyone else was only a prediction and not a promise. (Id.:21). The movant further acknowledged that his signature appeared at the end of the plea agreement, which he signed subsequent to reviewing the document with his attorney. (Id.). Although the movant informed the Court

---

[2]The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, 368 U.S. 487 (1962).

that he understood the terms of the agreement, the District Court Judge nonetheless reviewed the provisions therein with him. (<u>Id.</u>:22).

On the record before this court, it is evident that the movant understood the facts and the elements of the offense upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary. Therefore, the movant's knowing and voluntary guilty plea waived all non-jurisdiction defects and defenses. Thus, he is not entitled to review of the foregoing claims, as listed above in this collateral proceeding. Notwithstanding, the claims will be addressed briefly on the merits below.

To the extent the movant means to argue that he was unaware of the consequences of his plea, that claim is also belied by the record. As noted above, the Rule 11 proceeding thoroughly addressed the consequences of the guilty plea, the maximum penalty, and the sentence appeal waiver. Thus, it is clear that the movant may not collaterally challenge his sentence, as he purports to do so here, in the guise of an ineffective assistance of counsel claim.

There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal. The record reveals that the waiver did not result in an unlawful denial of his right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government. Under the circumstances presented here, the movant is not only precluded from

8

challenging the manner in which his sentence was imposed, but is also precluded from challenging his sentence in the guise of an ineffective assistance of counsel claim. <u>Williams</u>, <u>supra</u>. Moreover, even if the claims were not precluded, as discussed above, no showing has been made that the movant was denied effective assistance of counsel. Thus, the movant has failed to establish prejudice pursuant to <u>Strickland</u> and is therefore entitled to no relief on these claims. This will be discussed in detail <u>infra</u>.

## Discussion of Claims

As will be demonstrated in more detail <u>infra</u>, the movant is not entitled to vacatur on any of the claims presented.[3] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally fair trial and due process of law. The movant therefore is not entitled to habeas corpus relief. <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also</u> <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to

---

[3]Briefly, the evidence against the movant was more than sufficient to support his conviction. The movant has not shown that the result of the guilty plea, appeal, or sentencing would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to <u>Strickland</u> has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a criminal proceeding, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).

Specifically, the movant challenges counsel's effectiveness. Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), which is not a favorable standard to the movant. <u>See Massaro v. United States</u>, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a movant must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. <u>Chandler v. United States</u>, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(<em>en banc</em>), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001) ; <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Moreover, a habeas court's review of a claim under the <u>Strickland</u> standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ____ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" <u>Id.</u> at 1314 (<u>quoting</u> <u>Strickland v. Washington</u>, 466 U.S. at 689-90.

When assessing a lawyer's performance, "[C]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of

counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11th Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." Chandler, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." Chandler, 218 F.3d at 1318 (quoting Strickland, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the adversarial process at trial . . . worked adequately." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)(quotation marks omitted). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir.

2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d at 386.

Under the second prong of the test set forth in Strickland, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Rather, the movant must demonstrate that "there is a reasonable probability that, absent [counsel's] errors, the jury would have had a reasonable doubt regarding [his] guilt." Blackburn v. Foltz, 828 F.2d 1177, 1186 (6th Cir. 1987), cert. den'd, 485 U.S. 970 (1988), see also, Montgomery v. Petersen, 846 F.2d 407, 416 (7th Cir. 1988).

However, it is well-settled that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11th Cir. 1982); Coco v. United States, 569 F.2d 367 (5th Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.), cert. denied, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

Decisions whether to call a particular witness or cross-

12

examine certain witnesses are generally questions of trial strategy. See United States v. Costa, 691 F.2d 1358 (11th Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] been given no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir. 1992)(quoting United States ex rel. Cosey v. Wolff, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strickland v. Washington, 466 U.S. at 690-91.

In **claims one and two**, the movant asserts he was denied his Fifth and Sixth Amendment rights and he was denied effective assistance of counsel when his attorney failed to object to the breach of the plea agreement. (Cv-DE#1:5).

Specifically, the movant argues his counsel advised him that the "government did not want to go trial and would agree to whatever plea agreement he wanted." (Cv-DE#1:5). In turn, the movant informed counsel he would plead guilty to Count Five of the indictment so long as there was a stipulation of 41 grams of cocaine. (Id.). Upon counsel presenting the plea to the movant, the movant stated he wanted the drug amount set forth in the plea agreement, which counsel expressed was not a problem (Id.). However, at the change of plea hearing, the movant wanted more time to think about the plea agreement because it was ambiguous. (Id.:5(A)). Counsel in an attempt to coerce the movant to enter a guilty plea, informed the movant that he faced 30 to life in prison. (Id.). Upon the District Court Judge informing the movant that he would determine the drug amount, the movant acquiesced.

13

(<u>Id.</u>).

The movant further alleges that the factual proffer set forth during the change of plea hearing differed from those set forth in the PSI. (Cv-DE#1:5(A)). The movant takes issue with the inclusion of the "offense conduct" portion of the PSI regarding the movant's recorded wire tap conversation with Michael Olmedo on August 14 and 17 of 2007. (<u>Id.</u>). It was his belief, that because the government sought to dismiss Count One of the Indictment, any facts with respect thereto should not be considered when determining the movant's sentencing guidelines. (<u>Id.</u>:5(B)).

Moreover, the movant asserts that at no time during the change of plea hearing, was he advised of a 5 year mandatory minimum or that he would be attributed a drug amount of 100 to 400 kilos. Notwithstanding all of the movant's contentions set forth with respect to **Claim One**, they are all without merit as the movant voluntarily, knowingly and intelligently entered into a guilty plea and plea agreement with the government.

Likewise, he argues counsel was ineffective in failing to object to the drug amount attributed to him in the PSI because the movant argues although he pleaded guilty to 41 grams of cocaine, the PSI held him accountable for 100 to 400 kilograms of marijuana, the crack cocaine equivalent. (Cv-DE#1:6).  The government failed to prove by a preponderance of the evidence that the movant was in possession of a drug amount over 41 grams. (<u>Id.</u>:6(A)). Moreover, the government failed to demonstrate that the crack cocaine found in the movant's residence was relevant to his offense of conviction. (<u>Id.</u>).

As may be recalled, a review of the change of plea proceedings

14

reveals that counsel never assured the movant that by pleading guilty he would only receive a five-year sentence or that he would only be held accountable for 41 grams of cocaine. Moreover, the change of plea transcript reveals that no promises were made to the movant to coerce or induce him to plead guilty. Contrary to the movant's arguments, the court specifically informed the movant that Count 5 of the indictment carried with it a maximum sentence of 20 years imprisonment. Neither did the change of plea hearing nor the plea agreement, limit the movant's sentence exposure to five years. Moreover, neither during the change of plea hearing nor in the plea agreement was the movant held accountable for a specific drug amount. Instead, prior to the movant being sworn in for his Rule 11 hearing, the court, along with defense counsel, in detail, explained to the movant that relevant conduct is not always limited to the count of conviction, his plea agreement was silent to a drug amount and that the amount the movant was going to be held accountable would be determined at the sentencing hearing; all to which the movant agreed. Moreover, after being sworn in, the movant acknowledged that he would not be allowed to withdraw his plea solely as a result of the sentence received.

An excerpt from the change of plea hearing reveals:

MR. PEREZ: I have met with the defendant this morning, and the defendant now advises me that he's concerned about a matter, which I think is inconsequential in the plea agreement, which can be subject of a sentencing hearing. I told him that the plea agreement is a very reasonable one under the circumstances, that allows him to reduce his exposure and avoid a trial in the case.

He indicated to me now that he needs more time to think about it. And I indicated to him that there's no time for reflection; he has already had time to think about it, and the alternative would be to go to trial. If he were to go to trial, under the Sentencing Guidelines, he's

looking at no less than 360 months and up to life, a
matter which I have discussed with him at length.

* * * * *

MR. PEREZ: Judge, if I may, because I do not want to
clarify a statement which is otherwise accurate. The plea
agreement allows him to plead to a lesser count, which is
Count 5, and reduces his exposure. If he were to take an
open plea to the Court, he will be pleading to the
conspiracy, and thereby, if he were to be convicted,
looking at no less than 30 years in jail and potentially
up to life.

* * * * *

THE DEFENDANT: Uhm - - get the mike - - your Honor,
there's some things on my plea agreement I was not aware
of until now. So, if I can please have like a day or two
to look over my plea before I make a decision about this.

THE COURT: It's not up to me. I can accept your plea at
any time. That's not a problem. The question is whether
or not the plea agreement's going to be extended to you
for any longer period of time.

Mr. Cronin?

MR. PEREZ: Judge, let me explain the - - what he's
concerned about - - and I hope he understands - - that
the amounts that will ultimately be attributed to him as
relevant conduct are matters that are sentencing issues
that are not to be decided today. I explained that to
him. There's nothing really that I can say. I mean we can
take two or three days, but the resolution of that issue
will be the same. And I'm afraid that Mr. Cronin been
extremely reasonable, and what he told me this morning
was there were - - you know, that he needed to have a
decision taken in the case.

I don't think that the - - what the defendant is asking
for is for the prosecutor to be bound as to the amount of
relevant conduct in the case. And I said that that is not
something that I will ask, because, frankly, it's not in
the best interests of the defendant as well. That's
basically what he wants. And that's basically the reason
why I believe that if he's gonna make an intelligent
decision, he has to make an intelligent decision today.

16

THE COURT: What provision of the plea agreement were you unaware of, Mr. Gonzalez?

THE DEFENDANT: Your Honor, Count 5 charges me with - - we have the proffer here, Count 5 - -

THE COURT: You can have a seat, have a seat.

THE DEFENDANT: No, that's okay, your Honor. Count 5 charges me with a cert - - my understanding was I was pleading guilty to Count 5, your Honor. But I see there's relevant conduct that . . . .

THE COURT: The plea agreement says you're pleading guilty to Count 5, but the plea agreement also says that in terms of relevant conduct, which is not always limited to the count of conviction, you're agreeing that the quantity of controlled substance attributed to you is between a hundred kilograms and 400 kilograms of marijuana. The technical term is 'at least a hundred kilograms, but less than 400 kilograms of marijuana.'

So, if you enter into the plea agreement, as it's currently written, that is the relevant conduct range that I will consider at sentencing. So . . . .

MR. PEREZ: And I want this man to make an intelligent decision. The reason why it is irrelevant, the count that he's pleading is that potentially there may be an issue as to whether he's a career offender or not. And by pleading to a lessor count, he, in essence, is automatically reducing his exposure both under the Guidelines and under the provisions of the career offender statute.

I also told him - -

THE COURT: The one thing I can tell you about Count 5, Mr. Gonzalez, is this, okay? It is currently charged without any drug quantity amount. That means that under current law and the way the Eleventh Circuit and the Supreme Court have interpreted the Sixth Amendment and what an indictment has to charge, the most that could be imposed upon you for any plea on Count 5 is 20 years of imprisonment. No matter what else happens, that's what your sentence would be capped at, at the worst. So, even if your Guidelines scored out to be higher than that, I could not go beyond 20 years, because the indictment

doesn't charge a drug quantity which triggers a different statutory minimum or maximum for you.

* * * * *

THE COURT: [S]o, with regards to Count 1, if you were to enter a guilty plea to that later on straight up, as they say, Mr. Gonzalez, without any plea agreement with the government, then you are facing a minimum sentence of – – without looking at anything else, career offender status or enhancements or anything else, you're facing a minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment with regards to the powder cocaine part of Count 1 alone, nothing else taken into account.

* * * * *

MR. PEREZ: [I]n reviewing the plea agreement, there are no amounts that the defendant is pleading to. So, he's not pleading to more than a hundred kilos of marijuana and less than 400. The plea, in essence, is silent as to the amount.

MR. CRONIN: That is correct, your Honor. I believe last week I had given Maria two potential plea agreements that we might be using today. The one the defendant has elected to use, where he's pleading simply to Count 5, is silent as to the amount of relevant narcotics for sentencing purposes, and allows that to be determined by the Court at sentencing. It does not bind the defendant to any particular drug amount. So, he is free to, at sentencing, argue that the amount of relevant conduct is an ounce of cocaine, as opposed to the drugs that were found in his residence at the time of his arrest, or the drugs that wire recordings demonstrate that he was conspiring to possess with the intent to distribute. All of that is left for sentencing.

The plea is simply to Count 5, with no drug amount specified. And the government certainly would not be willing to offer a different plea agreement in terms of specifying an amount of only an ounce.

THE COURT: Okay. Do you understand that, Mr. Gonzalez?

THE DEFENDANT: Yes, your Honor.

18

THE COURT: So, this different version of the plea agreement would have you pleading guilty to Count 5 without there being any agreement between the parties as to the amount of cocaine for which you will be held responsible. That's a matter that I'll decide at sentencing by applying the Guidelines and listening to what the parties have to say and considering the evidence in the case. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: But that doesn't guarantee you that the amount of cocaine that you think is right is the one that I'm going to apply. It also doesn't mean the government is going to get to apply the amount of cocaine that it thinks is right. Each party is going to present its arguments to me, and then I'll go ahead and make a decision. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you wish to enter a guilty plea that's silent on the amount of cocaine, or is there another issue you have?

THE DEFENDANT: No, your Honor, I mean I will leave it up to the courts - - your Honor to decide that drug amount, your Honor.

THE COURT: Right. Is there anything else - - do you want to enter a guilty plea pursuant to a plea agreement that leaves drug quantity for me to determine later? Is that what you wish to do, or - -

THE DEFENDANT: Yes, your Honor.

(Cv-DE#9,Ex.2:2-13). As is evident from the change of plea hearing, the movant was fully aware of the sentencing exposure he faced, and that he was pleading guilty to Count 5 that was silent as to amount of cocaine, an issue which would later be resolved by the Court during the sentencing hearing.

Moreover, during the change of plea hearing, it was unequivocally clear that the plea agreement the movant signed

contained a provision therein stating that "[t]he office of the United States Attorney for the Southern District of Florida reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including **all relevant information concerning the offenses committed, whether charged or not**, as well as concerning the defendant and the defendant's background." (Cr-DE#468:2-3)(emphasis added). Accordingly, the movant is precluded from now claiming that relevant conduct should be limited to the offenses that gave rise to Count 5 of the indictment only.

Moreover, it appears the movant misunderstands the applicability of relevant conduct. Under the advisory sentencing guidelines, courts are permitted to consider "not merely the charged conduct, but rather all 'relevant conduct,' in calculating a defendant's offense level. United States v. Villaneuva-Naranjo, 276 Fed. Appx. 995 (11th Cir. 2008); citing United States v. Hamaker, 455 F.3d 131, 1336 (11th Cir. 2006). Relevant conduct includes both uncharged and acquitted conduct, despite whether the conduct occurred outside the relevant statute of limitations. Id.; citing United States v. Behr, 93 F.3d 764 (11th Cir. 1996). The commentary to the sentencing guidelines explains "with respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities with which he was directly involved . . . ." U.S.S.G. 1B1.3, com. app. n.2.

With respect to relevant conduct, the movant argues that it was improper to hold him accountable for the marijuana equivalent of more than 100 kilograms but less than 400 kilograms of marijuana as relevant conduct when he never entered a guilty plea thereto. However, the Eleventh Circuit, broadly construes the provisions of relevant conduct. United States v. Ignacio Munio, 909 F.2d 436,

20

438-39 (11th Cir. 1990)(a district court may evaluate relevant conduct not included in the indictment for sentencing purposes). Moreover, the government does not have an obligation to disclose relevant conduct to defense counsel or the movant. United States v. Behr, 93 F.3d 764 (11th Cir. 1996). As the Eleventh Circuit in Behr noted "the relevant conduct that eventually gets considered in the PSI is unknown to both the government and the defendant when a plea is entered, because the probation officer has not prepared the PSI at that time. The government does not have a duty to disclose information it does not possess." Id. at 766. Accordingly, the government did not breach the plea agreement and counsel was not deficient in failing to object to the use of relevant conduct in determining the movant's offense level.

Even if the government was aware of the movant's "expanded role" at the time he pleaded guilty, the government nevertheless did not breach its term of the agreement. The Eleventh Circuit's decision in Behr did not turn on the government's actual knowledge of what facts that may be used to enhance the movant's sentence, but rather at the time of the plea hearing, the government could not identify which relevant conduct the probation officer would use in preparing the PSI. United States v. Villanueva-Naranjo, 276 Fed. Appx. 955 (11th Cir. 2008).

To the extent the movant argues that relevant conduct set forth in the PSI were isolated, unrelated events that happen to only be similar in kind, this claim is without merit. According to Sentencing Guideline 1B1.3:

(a) Unless otherwise specified, (i) the base offense level where the guidelines specifies more than one base offense level, (ii) specific offense

characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)  (A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

      (B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. §1B1.3(a). The "offense conduct" portion of the PSI makes clear the movant's continuous involvement with drugs during the course of the conspiracy. (PSI¶¶14,29,30,44). Specifically, the PSI states that on June 21, 2007, the movant sold one and one-half ounce of cocaine. (PSI¶59). On August 14, 2007, he was heard asking for "4" and on August 17, 2007, he requested "7" more, referring to the quantity of cocaine. (Id.). Moreover, at the time of his arrest, the movant was in possession of crack cocaine. (Id.). Accordingly, the PSI correctly held the movant accountable for the appropriate amount of drugs for all of the acts he committed, along with those reasonably foreseeable in furtherance of the conspiracy.

Under these circumstances, the movant is entitled to no relief on this claim.

Even if counsel provided the movant with mistaken information regarding his potential guideline range, the movant remains without merit. The law is clear that an inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel. United States v. Pease, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years); United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). Under these circumstances, the movant is entitled to no relief on this claim.

Further, "the Constitution does not ensure that lawyers will be good negotiators, locking in the best plea bargains available." United States v. Springs, 988 F.2d 746, 749 (7th Cir. 1993). In Springs, the court found that the defendant entered voluntary pleas and received a sentence within the Guidelines and had since been reduced to 15 months below the bottom of the prescribed range. Id. As such, the court stated that "[f]ailure to make deals that 'beats' the Guidelines does not demonstrate ineffective assistance . . . and a lawyer's incorrect appreciation of the Guidelines' effects does not establish a violation of the sixth amendment. Id.; citing Wade v. United States, 504 U.S. 181 (1992); United States v. Smith, 953 F.2d 1060 (7th Cir. 1992); United States v. Brigham, 977 F.2d 317 (7th Cir. 1992). Thus, the defendant in Springs, had "no entitlement to a discount of any kind, no right to be treated more leniently than other criminals unlucky enough to be without

23

information for which the prosecutor is wiling to pay." Further, the court stated that "'unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.'" Springs, 988 F.2d at 749. "Defendants have no substantive or procedural right to bargain-basement sentences." Id.; citing Mabry v. Johnson, 467 U.S. 504 (1984).

As discussed in this Report, the movant voluntarily and knowingly entered his guilty plea and has failed to establish either deficient performance or prejudice arising from counsel's failure to pursue the nonmeritorious issues alleged in this collateral proceeding. Moreover, there is no objective evidence to support the movant's conclusory allegation that defense counsel failed to resolve the case in his client's best interest. To the contrary, the movant benefitted by a reduction of three levels in his base offense based on his timely guilty plea and acceptance of responsibility and not being exposed to a higher sentence which he would have faced had he proceeded to trial or pleaded guilty straight to the indictment.

In **claim three**, the movant asserts his sentence was imposed in violation of due process of law and he was denied effective assistance of counsel under the Fifth and Sixth Amendments of the United States Constitution when his attorney failed to object to certain criminal history points assessed in the Presentence Investigation Report. (Cv-DE#1:7-7(A)).

Specifically, the movant alleges he was inappropriately assessed six criminal history points for two probation violations sentences which occurred prior to turning 18 years of age and said offenses did not occur within 5 years prior to the underlying criminal offense. (Cv-DE#1:7(A)).

24

Moreover, he argues that his probation violation re-sentencing occurred in state court without a hearing. (Cv-DE#1:7(A)). As such, he was denied due process as a result thereof. (Id.).

Moreover, the movant informed the District Court that he did not commit his prior conviction of armed burglary. (Cv-DE#1:7(A)). Likewise, he argues his constitutional rights were violated with respect to the armed burglary conviction because although he pleaded guilty thereto, he was unaware said conviction included convictions for firearm theft and property theft. (Id.). Accordingly, the movant was never fully made aware, upon entering his guilty plea for the armed burglary offense, that he also pleaded guilty to other charges. (Id.).

Likewise, the movant was inappropriately given three criminal history points for an assault conviction. (Cv-DE#1:7(A)&(B)).

With respect to the movant's prior sentence of burglary of conveyance, grand theft auto and criminal mischief (Dkt#F9598999), this case was properly assessed three criminal history points by the probation officer. U.S.S.G. §4A1.1, in relevant part, states: "(a) Add 3 points for each prior sentence of imprisonment exceeding one year one month." Id. The Application Notes to U.S.S.G. §4A1.1 reads:

> 1. §4A1.1(a). Three points are added for each prior sentence of imprisonment exceeding one year and one month. There is no limit of points that may be counted under this item. The term 'prior sentence' is defined at §4A1.2(a). The term 'sentence of imprisonment' is defined at §4A1.2(b). Where a prior sentence of imprisonment resulted from a revocation of probation, parole, or a similar form of release, see §4A1.2(k).
>
> Certain prior sentences are not counted or are counted

only under certain conditions:

A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period. <u>See</u> §4A1.2(e).

A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this item only if it resulted from an adult conviction. <u>See</u> §4A1.2(d).

<u>Id.</u> Specifically, with offenses committed prior to age eighteen, U.S.S.G. §4A1.2(d) states:

(1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under §4A1.1(a) for each such sentence.

(2) In any other case,

(A) add 2 points under §4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

Moreover, Sentencing Guidelines §4A1.2(e), in relation to applicable time periods, reads:

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

(4) The applicable time period for certain sentences resulting from offenses committed prior to age eighteen is governed by §4A1.2(d)(2).

<u>Id.</u> A review of the movant's PSI reflects that all of his prior convictions occurred within the fifteen-year period prior to the commencement of the movant's underlying criminal offense. The indictment alleged that the conspiracy, which the movant was involved in, occurred from June 7, 2007 to September 20, 2007. The movant's prior convictions, which were assessed criminal history points, occurred in 1995, 1998, 1999, and 2005; all withing the fifteen-year time period. (See PSI¶¶91,92,96,97,98).

Moreover, all of the movant's prior convictions which received three criminal history points were all for sentences exceeding one year and one month. (See PSI¶¶91,92,96,97).

The movant's argument that his offense which occurred when he was seventeen years of age should not be counted is without merit. (See PSI¶91). It is clear from the PSI, that although the movant was initially arrested under a juvenile case number, the case was subsequently transferred and the movant was ultimately convicted as an adult. Thus, in line with the sentencing guidelines' commentary, said sentence could be assessed criminal history points.

To the extent the movant argues he was inappropriately assessed three criminal history points for a second conviction that occurred prior to his eighteenth birthday, this claim is also

without merit. The PSI does not reflect a prior juvenile conviction
which was assessed any criminal history points.

Finally, to the extent the movant argues that he was
inappropriately assessed two points for committing the offense less
than two years from release from custody, this claim is without
merit. On May 25, 2005, the movant was arrested and he was
subsequently released on September 27, 2005. (PSI¶98; Dkt#F05-
16811). According to the PSI, the offense in which the movant was
involved occurred from June 7, 2007 to September 20, 2007.
Therefore, the movant committed the underlying criminal offense
less than two years from release from custody. He was thus,
appropriately assessed two criminal history points pursuant to
U.S.S.G. §4A1.1(e)[4].

To the extent the movant argues that due process requires a
hearing on the probation violation rehearing, this claim fails to
warrant relief. The movant has made no showing to support this
claim. The movant fails to provide any facts or law upon which he
is entitled to relief on this claim. Such a bare and conclusory
allegation, unsupported by the record, is subject to summary
dismissal. Machibroda v. United States, 368 U.S. 487 (1962).
Consequently, no deficient performance or prejudice has been
demonstrated stemming from counsel's representation. See
Strickland, 466 U.S. 668 (1984).

To the extent the movant takes issue with the validity of any
of his prior convictions, this claim also fails. The law is clear

---

[4]U.S.S.G. §4A1.1(e) directs to "[a]dd 2 points if the defendant
committed the instant offense less than two years after release form
imprisonment on a sentence counted under (a) or (b) or while in imprisonment
or escape status on such a sentence."

Id.

that once the movant successfully attacks in the state forum his prior state convictions used to determine his criminal history points in this case, at that time he may then seek to reopen and reduce the federal sentence. See United States v. Walker, 198 F.3d 811, 813 (11th Cir. 1999).

It is well settled that collateral attacks on prior convictions are generally prohibited in federal sentencing proceedings, and may be raised only when the conviction was obtained in violation of the defendant's right to counsel. United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997)(citing, Custis v. United States, 511 U.S. 485 (1994)); United States v. Farris, 77 F.3d 391, 397 & n. 10 (11th Cir.), cert. denied, 519 U.S. 896 (1996). Moreover, the Supreme Court has held that a federal prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction through a motion pursuant to 28 U.S.C. §2255 directed at the enhanced federal sentence. Daniels v. United States, 523 U.S. 374 (2001), citing, Custis v. United States, 511 U.S. 485, 493 (1994)(only prior convictions which may be collaterally attacked at sentencing were those obtained in violation of the right to appointed counsel).

The movant does not assert that he was not represented by counsel. The movant has also not shown that the prior convictions he is challenging in this proceeding have been vacated, and there is nothing of record to support such a conclusion. Thus, there appears to have been no legal basis to challenge the validity of underlying state convictions at the time of the movant's sentencing in federal court, nor at this time. Under these circumstances, no deficient performance or prejudice has been demonstrated arising from counsel's failure to pursue the claim at sentencing or on

appeal.

## Evidentiary Hearing

Any request for an evidentiary hearing with respect to the foregoing claims should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported, generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that this motion to vacate be denied on the merits.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 20th date of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Alberto L. Gonzalez, Pro Se
     Reg. No. 79072-004
     FCI - Coleman (II)
     United States Penitentiary
     Inmate Mail/Parcels
     P.O. Box 1034
     Coleman, FL 33521

30

Anne Ruth Schultz, AUSA
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132

Armando Rosquete, AUSA
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132